**2023-1570**

# United States Court of Appeals
# for the Federal Circuit

---

**MEYER CORPORATION, U.S.,**

Plaintiff-Appellant,

*v.*

**UNITED STATES,**

Defendant-Appellee.

---

Appeal from the United States Court of International Trade,
No. 13-cv-00154, Senior Judge Thomas J. Aquilino

---

**REPLY BRIEF OF PLAINTIFF-APPELLANT,
MEYER CORPORATION, U.S.**

---

John P. Donohue
  *Counsel of Record*
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
NEVILLE PETERSON LLP
100 N. 18th Street, Ste. 300
Philadelphia, PA 19103
(267) 207-3421
jdonohue@npwny.com

September 21, 2023

FORM 9. Certificate of Interest                                      Form 9 (p. 1)
                                                                     March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1570

**Short Case Caption** Meyer Corporation, U.S. v. US

**Filing Party/Entity** Meyer Corporation, U.S.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/23/2023

Signature:  /s/ John P. Donohue

Name:  John P. Donohue

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Meyer Corporation, U.S. | | Meyer International Holdings, Ltd. Parent Company, not publically traded |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)   ☐   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☑    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS ........................................................ ii

TABLE OF AUTHORITIES ................................................. iii

ARGUMENT ...................................................................... 2

I.    The Trade Court's Decision is Based on an Improperly Drawn Adverse Inference. ......................................................................... 2

    A.    The Trade Court's Adverse Inference. ................................. 2

    B.    The Conditions Precedent for Drawing an Adverse Inference are Not Present in this Case. ....................................................... 5

    C.    The Adverse Inference is a Finding of Fact Which Must be Set Aside as "Clearly Erroneous." ...................................................... 11

II.    Meyer Has Not Waived Any Issues for Appeal. .......................... 12

III.    Meyer Never Waived Any Right to Challenge the "Second Sale" Appraisements. ......................................................................... 15

IV.    The CIT Erred in Adopting the Government's "Second Sale" Appraisements Without Considering Factors Cited in Rejecting Meyer's "First Sale" Appraisements. ........................................................ 18

CONCLUSION .................................................................. 23

# TABLE OF AUTHORITIES

## Cases

*Bashir v. Amtrak*, 119 F.3d 929 (11th Cir. 1997) ..........................................7

*Bd. Of Trs. Of New Orleans Employers Intern. Longshoremen's Assn. v Gabriel, Roeder, Smith & Co.,* 529 F.3d 506 (5th Cir. 2008)..................12

*Beck v. Test Masters Educ. Services*, 2012 U.S. Dist. LEXIS 190127 (D.D.C. 2012) ...........................................................................................9

*Braintree Labs., Inc. v. Novel Labs., Inc.*, 749 F.3d 1349 (Fed. Cir. 2014)...........11

*Concord Boat Corp. v. Brunswick Corp.*, 1997 U.S. Dist. LEXIS 24068 (E.D. Ark. 1997)......................................................................................9

*Consol. Aluminum Corp. v. Alcoa Inc.*, 244 F.R.D. 335 (M.D. La. 2006)...............9

*E.C. McAfee Co. v. United States*, 842 F.2d 314 (Fed. Cir. 1988) .........................17

*E.I. DuPont de Nemours & Co. v. Kolon Ind. Inc.*, 803 F. Supp. 2d 469 (E.D. Va. 2011).............................................................................................9

*Fraser v. City of New York,* 2023 U.S. Dist. LEXIS 4530 (S.D.N.Y. 2023) ...........9

*Indivor v. Dr. Reddy's Labs., S.A.* 930 F.3d 1325 (Fed. Cir. 2019) .......................11

*Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed. Cir. 1984) ....... 17, 18, 19, 20

*Koon v. United States*, 518 U.S. 81 (1996).................................................12

*Meyer Corp. U.S. v. United States*, 2021 Ct. Intl. Trade LEXIS 26 (2021) 3, 14, 15

*Meyer Corp. U.S. v. United States*, 43 F.4th 1325 (Fed. Cir. 2022).........................3

*Morgan v. Cnty. of Nassau*, 2017 U.S. Dist. LEXIS 22992 (E.D.N.Y 2017). ....7, 22

*Nissho-Iwai American Corp. v. United States*, 982 F.2d 505 (Fed. Cir. 1992)................................................................................. passim

*Optowave Co. v. Nikitin*, 2007 U.S. Dist. LEXIS 6134 (M.D. Fl. 2007). ...............11

*Peerless Clothing Int'l Inc. v. United States*, 602 F. Supp. 2d 1309 (Ct. Int'l Tr. 2009) ...............................................................................................20

*Phillip M. Adams & Assocs., LLC v. Dell Computer Corp.*, 519 Fed. Appx. 998 (Fed. Cir. 2013) ...........................................................................12

*Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99 (2nd Cir. 2002)...............................................................................................5, 7

*Simod America Corp. v. United States*, 872 F.2d 1572 (Fed. Cir. 1989) ......... 20, 21

*Sines v. Kessler*, 2021 U.S. Dist. LEXIS 199110 (W.D. Va. 2021) .......................9

*Target Stores v. United States*, 471 F. Supp. 2d 1344 (2007) ..............................20

*Thompson v, U.S. Dep. of Housing and Urban Dev.*, 219 F.R.D. 93 (D. Md. 2003)..............................................................................................9

*U.S. International Union of Petroleum and Indus. Workers, AFL-CIO,* 870 F.2d 1450 (9th Circ. 1989). ..........................................................5

*United States v. Getz Bros. & Co,* 55 C.C.P.A. 11 (1967) ....................................17

*United States v. S.S. Kresge Co. et al,* 26 C.C.P.A. 349 (1939)............................17

*United States v. U.S. Gypsum Co.*, 333 U.S. 364 (1948)......................................11

*United States. v. E. Besler & Co.,* 64 C.C.P.A. 121 (1977)....................................16

*Universal Electronics Inc. v. United States*, 112. F.3d 488 (Fed. Cir. 1997)..........16

*Volkswagen of Am. Inc. v. United States*, 532 3d. 1365 (Fed. Cir. 2008)................16

**Statutes**

19 U.S.C. § 1401a ...............................................................................2, 17

19 U.S.C. § 1514(a) ................................................................................16

19 U.S.C. § 1515 ....................................................................................16

28 U.S.C. § 1581 .............................................................................. 16, 19

28 U.S.C. § 2639 ....................................................................................16

28 U.S.C. § 2640 .............................................................................. 15, 20

28 U.S.C. § 2643 .............................................................................. 18, 19

**Regulations**

19 C.F.R. § 152.103 ......................................................................... passim

**2023-1570**

# United States Court of Appeals
# for the Federal Circuit

---

**MEYER CORPORATION, U.S.,**

Plaintiff-Appellant,

*v.*

**UNITED STATES,**

Defendant-Appellee.

---

Appeal from the United States Court of International Trade,
No. 13-cv-00154, Senior Judge Thomas J. Aquilino

---

### REPLY BRIEF OF PLAINTIFF-APPELLANT,
### MEYER CORPORATION, U.S.

Plaintiff-Appellant, Meyer Corporation, U.S. ("Meyer"), in accordance with Rules 28(a) and 32(a) of the Federal Rules of Appellate Procedure and the Rules of Practice of the U.S. Court of Appeals for the Federal Circuit, hereby submits its reply brief in this appeal.

## ARGUMENT

### I.    The Trade Court's Decision is Based on an Improperly Drawn Adverse Inference.

The lower court's decision is based on an "adverse inference"—specifically, that plaintiff failed to provide the financial records of Meyer International Holdings, its British Virgin Islands ("BVI") parent company, because those records contained information adverse to its case. The Government trumpets this lower court finding of fact as the centerpiece of its defense and asserts that the adverse inference is a "factual and evidentiary determination" that has not been shown to be "clearly erroneous," or an "abuse of discretion."  Govt Br. at 16.

However, as discussed herein, the trial record shows that the conditions for drawing an adverse inference are not satisfied. By drawing an adverse inference based solely on pure speculation, the lower court committed clear error.

### A.    The Trade Court's Adverse Inference.

After a week-long trial concerning the circumstances of the "first sales" between Meyer's manufacturing units and Meyer's trading units, the lower court drew no conclusions concerning whether those sales were at "arms'-length," or provided a satisfactory basis for determining dutiable "transaction value" pursuant to 19 U.S.C. § 1401a(b), and the test set out by this Court in *Nissho-Iwai American Corp. v. United States*, 982 F.2d 505 (Fed. Cir. 1992). Rather, the lower court rested its

first post-trial decision entirely on an adverse inference that, had the financial records of MIH been produced in discovery, they might have contained evidence of "non-market economy" influences which, in the court's view, would have rendered the "first sales" unacceptable as a basis for transaction value. *Meyer Corp. U.S. v. United States*, 2021 Ct. Intl. Trade LEXIS 26 (2021).[1] After this Court reversed and vacated the trade court's opinion—holding "non-market economy" influences to be irrelevant to the transaction value appraisement of merchandise[2] —the lower court (replacing references to "non-market economy" influences with ellipses, Appx9 [3]) restated its adverse inference—this time opining that "even if the cost of inputs were not suspect, the court observed that the parent company 'Meyer Holding[s] *presumptively* had the ability to influence the price paid or payable for them.'" Appx8 (emphasis added). This adverse inference is presumably imposed against plaintiff as a discovery sanction. The Court states:

> Even ignoring the fact that the claimed transaction values involve inputs from a non-market-economy country in the merchandise at issue,

---

[1] Why or how benefits from a non-market economy country such as China would have flowed through a company in the British Virgin Islands was never explained. Nor did the trade court explain or suggest why a holding company would have wanted to influence prices in sales between two companies it owned; this would appear to be a "zero sum" game.

[2] *Meyer Corp. U.S. v. United States*, 43 F.4th 1325 (Fed. Cir. 2022).

[3] *See e.g., Meyer Corporation U.S. v. United States*, 2021 Ct. Int'l Tr. LEXIS 26, at *141-43 (2021); Opening Br. at 11.

the court still cannot ignore plaintiff's non-responsiveness to defendant's request for information during discovery.

Appx8. Admitting that "the Meyer parent is not subject to this litigation," Appx9, and therefore not subject to discovery, the CIT opined that because the parent company has interest in seeing matters like these

> … resolved favorably, it is therefore presumed to be forthcoming, *even unprompted*, to provide whatever U.S. Customs and Border Protection ("CBP" or "Customs") deems necessary to assist in their resolution,[4] and the fact that in that regard there has apparently been considerable 'resistance' throughout this case to that not unreasonable discovery request and the 'assistance' that the parent could have provided its subsidiary to address necessary questions … speaks volumes."

Appx10. (emphasis added).

And restating the adverse inference which had previously been directed at "non-market-economy" influences, to some unspecified "non-market" influence, the lower court rested its entire decision in this action upon its restated adverse inference:

> …the foregoing leads the court to doubt that the accurate ascertainment of the 'true' value of the 'price paid or payable at the first sale level in the customs duty sense has been demonstrated in this case.
>
> *Meyer II* at *50-51.

Appx.10.

---

[4] Of course, CBP had already at this point made its decision, both in the liquidation of Plaintiff's entries and the denial of its protest. The matter was now before the CIT, for determination based on the *de novo* record made before that court.

4

**B.    The Conditions Precedent for Drawing an Adverse Inference are Not Present in this Case.**

Adverse inferences are typically drawn as a sanction against a party failing to cooperate in discovery, or when there has been spoliation of evidence. A court may draw an adverse inference where a party, with control over the evidence, "had an obligation to timely produce it," failed to do so with a "culpable state of mind," and the missing evidence would "support [a] claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2nd Cir. 2002). None of these circumstances are present here.

First, as the trade court realized, MIH was not a party to this case, and Meyer Corp. U.S.—the Plaintiff—did not have access to MIH's financial statements;

> The court understands that the Meyer parent is not subject to this litigation and that the plaintiff, as its "independent" subsidiary, can claim an inability to obtain such information from it.

Appx9. A party is only obligated to produce during discovery those documents "which are in the possession, custody, or control of the party upon whom the request is served." Fed. R. Civ. P. 34(a); U.S. Ct. Int'l Tr. Rule 34(a). A party seeking to compel discovery has the burden of proving that the other party has possession, custody, or control of the requested item. *U.S. International Union of Petroleum and Indus. Workers, AFL-CIO,* 870 F.2d 1450, 1452 (9th Circ. 1989). Hence, by the trade court's admission, the fundamental predicate for imposing an adverse inference— failure to produce information within a party's control—is not present here.

5

Moreover, the Government never pressed Plaintiff to produce MIH's financials. The Government's discovery request to Meyer, and Meyer's response, appear in the record at Appx33, stating in relevant part:

> **10. Identify and produce all documents covering the period from January 1, 2008 to the present reflecting the corporate relationship, including but not limited to ownership, executive management and the consolidation of financial statements between plaintiff and the "Meyer Group" referred to in paragraph 9 of the Complaint.**
>
> **RESPONSE:** Meyer objects to this Request to the extent it seeks documents in the possession, custody or control of persons other than Meyer. Meyer objects to this request as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence because it is already established by paragraph 9 of the Amended Complaint that each of the companies involved in the production of the imported articles that are a subject of this Litigation are related companies. Meyer Holdings is not involved the production or sale of the Imported Articles that are the subject of this litigation, nor in the manufacture or sale of any other product.

Thus, Plaintiff stated three objections, all properly grounded in U.S. Ct. Int'l Tr. Rule 34: (1) lack of possession of the requested documents; (2) burdensomeness; and (3) lack of relevance. Appx33.

Faced with these objections, the Government did absolutely nothing. No deficiency letters were issued to Plaintiff under Rule 37 of the Federal Rules of Civil Procedure ("FRCP"), or Rule 37 of the U.S. Ct. Int'l Tr. Rules; nor were any motions filed to compel production of the MIH financials. Of course, a Rule 37 motion would have allowed the availability and relevance of the requested information to be litigated and resolved. But the Government did not question Plaintiff's characterization

6

of the request as burdensome; rather, it fully acquiesced to Meyer's well-stated objections. Having failed to timely challenge Meyer's objection to the request for production of MIH financials, the Government was hardly in a position to press for an adverse inference at trial,[5] and the trade court committed clear error by drawing the adverse inference itself.

Second, no evidence was adduced to suggest that Meyer Corp. U.S. failed to produce the MIH financials with a culpable state of mind. "[A]n adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997); *Residential Funding Corp. v. DeGeorge Fin. Corp. supra*, 306 F.3d at 107

---

[5] In similar circumstances, at least one trial court has characterized such a request as "absurd":

> Once plaintiffs served their discovery requests on defendants, defendants had thirty days to respond or object to those requests. Fed. R. Civ. P. 34(b)(2)(A) & (C). There is no dispute that defendants' objections to plaintiffs' requests were timely. If plaintiffs wished to pursue the requested discovery over defendants' objections, plaintiffs should have moved to compel pursuant to Rule 37 before the deadline to complete discovery. Plaintiffs failed to do so during the discovery period. Instead, plaintiffs first moved to compel in their cross-motion for summary judgment, filed on March 2, 2016, more than one year and five months after discovery had closed. (ECF Nos. 13 & 37.) The notion that plaintiffs should receive an adverse inference, or that the Court should strike defendants' affirmative defenses, when plaintiffs failed to timely pursue a motion to compel is absurd.

*Morgan v. Cnty. of Nassau*, 2017 U.S. Dist. LEXIS 22992 at *17 (E.D.N.Y 2017).

(2nd Cir. 2002) ("culpable state of mind" required). Rather, the explanation for non-production was stated in Meyer's discovery response: Meyer did not have "custody, possession or control" of the parent's company's financials, a fully sufficient reason under FRCP 34(a). At no point in its opinion does the trial court suggest that the MIH financials were withheld with a culpable mindset. The finding of culpability, whether made by a judge or a jury, is an essential element of imposing a negative inference.[6]

Third, and most crucially, there was no evidence adduced to suggest that the MIH financials had any relevance to the issue posed in litigation—*i.e.,* the acceptability of "first sale" transaction values under this Court's *Nissho-Iwai* test. That test involves an examination of the circumstances surrounding the sale of goods between a related buyer and seller. It also involved, in this case, application of the test set out in 19 C.F.R. § 152.103(l)(1)(iii), which is used to compare actual prices with prices in "sales of merchandise of the same class or kind." The Government had already been informed, in discovery, that the holding company, <u>MIH "is not involved the production or sale of the Imported Articles that are the subject of this litigation, nor</u>

---

[6] *See, e.g., Morrison v. Veale*, 2017 U.S. Dist. LEXIS 10196 (M.D. Al. 2017) (absent a finding that missing information is relevant, the trier of fact may not infer that the information was unfavorable to the litigant).

8

in the manufacture or sale of any other product[,]" Appx33, a statement the Government did not contest.

It is well-established that there is no basis to apply an adverse inference unless evidence has been put forth to suggest that "missing" information is relevant to a claim or defense in an action. *See e.g.*, *Thompson v, U.S. Dep. of Housing and Urban Dev.*, 219 F.R.D. 93, 105 (D. Md. 2003).[7] It is improper for any court to grant or apply an adverse inference based on speculation. There must be evidence from which the trier of fact can infer that missing information is relevant to a claim or defense and would be unfavorable to the party against whom the inference is to be drawn. *See e.g., E.I. DuPont de Nemours & Co. v. Kolon Ind. Inc.*, 803 F. Supp. 2d 469, 498 (E.D. Va. 2011).[8]

---

[7] 19 C.F.R. § 152.103(l)(1)(iii), provides:

(iii) Interpretative note 3. If it is shown that the price is adequate to ensure recovery of all costs plus a profit which is equivalent to the firm's overall profit realized over a representative period of time (*e.g.*, on an annual basis), in sales of merchandise of the same class or kind, this would demonstrate that the price has not been influenced.

[8] *See also Fraser v. City of New York,* 2023 U.S. Dist. LEXIS 4530 (S.D.N.Y. 2023); *Sines v. Kessler*, 2021 U.S. Dist. LEXIS 199110 (W.D. Va. 2021); *Beck v. Test Masters Educ. Services*, 2012 U.S. Dist. LEXIS 190127 (D.D.C. 2012); *Concord Boat Corp. v. Brunswick Corp*., 1997 U.S. Dist. LEXIS 24068 (E.D. Ark. 1997). As noted in *Consol. Aluminum Corp. v. Alcoa Inc.*, 244 F.R.D. 335, 347 (M.D. La. 2006):

There is nothing in the trial record to suggest that the financials of MIH had any relevance to the questions before the court—the sufficiency of Plaintiff's first sale prices under the tests put forth in *Nissho-Iwai* 982 F.2d 505 (Fed. Cir. 1992), and under Customs' governing regulation, 19 C.F.R. § 152.103(l)(1)(iii).

Yet Judge Aquilino's application of an adverse inference in this case is based on nothing more than rank speculation—first, that "non-market-economy influences" were channeled by MIH to the parties in the sales under consideration, and—when that notion was held legally irrelevant by this Court (*Meyer Corp. U.S. v. United States*, 43 F.4th 1325 (Fed. Cir. 2022))—that MIH influenced prices "not from a non-market economy country *per se*—but from the relationships of the related parties." Appx10. This was <u>clear error</u>.

Accordingly, none of the conditions for drawing an adverse inference were present here—Plaintiff, Meyer Corp. U.S., had no obligation (or ability) to produce the MIH financials; there was no showing of a culpable mind; and no showing that information in the MIH financials could have had any application to the claims and

---

It is inappropriate to give an adverse inference instruction based upon speculation that the deleted emails would have been unfavorable to Alcoa's case. Without some evidence, direct or circumstantial, of the unfavorable content of the deleted emails, the Court simply cannot justify giving the requested adverse inference instructions.

defenses in the action. As detailed below, the adverse inference must be set aside for clear error.

### C. The Adverse Inference is a Finding of Fact Which Must be Set Aside as "Clearly Erroneous."

In the context of a bench trial, an adverse inference is equivalent to a finding of fact by the court. *Optowave Co. v. Nikitin*, 2007 U.S. Dist. LEXIS 6134 (M.D. Fl. 2007). On appeal from a bench trial, this Court reviews a trial court's conclusions of law *de novo* and its findings of fact for clear error. *Indivor v. Dr. Reddy's Labs., S.A.* 930 F.3d 1325, 1335 (Fed. Cir. 2019); *Braintree Labs., Inc. v. Novel Labs., Inc.*, 749 F.3d 1349, 1358 (Fed. Cir. 2014). A factual finding is clearly erroneous if, despite some supporting evidence, this Court is left with the definite and firm conviction that a mistake has been made. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "The burden of overcoming the district court's factual findings is, as it should be, a heavy one." *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1559 (Fed. Cir. 1986).

A finding of fact is clearly erroneous if it is without substantial evidence to support it, the court misinterpreted the effect of the evidence, or the appellate court is convinced that the findings are against the preponderance of credible testimony. Reversal is warranted if the appellate court is left with "a definite and firm conviction that a mistake has been committed." *Bd. Of Trs. Of New Orleans Employers Intern.*

11

*Longshoremen's Assn. v Gabriel, Roeder, Smith & Co.,* 529 F.3d 506, 509 (5ᵗʰ Cir. 2008).

This Court has noted that a trial court commits reversible legal error by imposing an adverse inference sanction absent the required conditions (in particular, a finding of bad faith). *Phillip M. Adams & Assocs., LLC v. Dell Computer Corp.*, 519 Fed. Appx. 998, 1003 (Fed. Cir. 2013); *see also Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law.").

In this appeal, the Government defends the lower court's decision based on the adverse inference adopted by the trade court. Govt Br. at 16. However, as noted herein, the adverse inference on which the trade court's decision rests is clearly erroneous and an abuse of discretion. This Court should reverse that finding for clear error and remand this case with instructions for the trade court to render a decision based on the evidence adduced at trial, and not on the adverse inference.

## II.    Meyer Has Not Waived Any Issues for Appeal.

Next, the Government argues that Meyer has waived certain arguments by having failed to raise them in the appeal of the first post-trial decision of the CIT. Govt Br. at 20-25. But these arguments are without foundation.

The Government repeats its claims, debunked above, that plaintiff should have provided the financials of MIH in discovery. But Meyer's earlier appeal in this

12

case squarely and successfully raised the issue of why Meyer could not produce those financials and the error in the "non-market-economy" influence presumption the trial court drew from their absence. Similarly, this appeal squarely challenges the slightly-altered adverse inference which the lower court drew in the judgment appealed from.

The Government then raises certain straw-man arguments, claiming that Meyer has waived the right to appeal certain trial court rulings, such as the exclusion of certain summary documents from evidence pursuant to Federal Rule of Evidence ("FRE") 1006, and an unspecified "aspect of Mr. Pinkerton's testimony beyond the nonmarket economy on the first sale price." Govt Br. at 21. But Plaintiff has raised no appeals as to these matters.

The Government then addresses "other evidentiary absences" that supposedly "bolster the trial court's determination that Meyer has not demonstrated its entitlement to first-sale treatment of the imported cookware." *Id* at 23. But none of these are mentioned in the trial court's opinion. As noted above, the trade court ruled against Plaintiff—for the second time—based solely on adverse inferences drawn from the absence of MIH financials. While the trial court did adopt findings of fact in its 2021 decision,[9] it did not draw any conclusions from them, disposing of the

---

[9] The CIT adopted the Government's proposed findings of fact, which it noted were not materially different from Plaintiff's proposed findings of fact. *See e.g.,*

case solely based on its inference that the MIH financials may have disguised "non-market-economy country" influences being channeled to the buyers and sellers in the "sales for export to the United States." *See, generally, Meyer Corporation U.S. v. United States*, 2021 Ct. Int'l Tr. LEXIS 26, at \*138-143 (2021).

The Government then recites certain "evidentiary absences," which it claims doom Plaintiff's case, relying on Treasury Decision ("TD") 96-87. Govt Br. at 23-25. Setting aside the fact that the trial court never rested either of its judgments on its findings of fact (other than the improperly drawn adverse inferences arising from the lack of the MIH data), the Government's analysis is wholly misplaced. T.D. 96-87 is no more than a checklist of documents which CBP uses to determine *administratively* whether there is a <u>*bona fide*</u> <u>"first sale" for exportation to the United States</u>. That is not an issue in this case. The trial evidence of record clearly establishes that, in all cases, there are two sales of merchandise "for exportation to the United States"—(i) a sale from a manufacturer (MIL[10]) to a middleman (MMC[11]); and (ii) a subsequent sale from a middleman (MMC) to Plaintiff, Meyer

---

*Meyer Corporation U.S. v. United States*, 2021 Ct. Int'l Tr. LEXIS 26, at \*139-40 (2021).

[10] Meyer Industries Ltd. ("MIL") of Laem Chabang, Thailand

[11] Meyer Marketing (Macau Commercial Offshore), Ltd. ("MMC"), a trading company.

Corp. U.S. This is undisputed and a factual finding of the trial court. *Meyer Corp. U.S. v. United States*, 2021 Ct. Intl. Trade LEXIS 26 at \*14-15 (2021).

The issue here, rather, is whether the relationship of the factories and the middleman affects the "price paid or payable" for the merchandise and whether those sales meet the test set out in Customs' regulations, specifically 19 C.F.R. § 152.103(1)(1)(iii). TD 96-87 is emphatically *not* a vehicle for making such a determination.

Nor is TD 96-87 a checklist for trial proof. In a protest case such as the instant one, the trade court renders decisions *de novo* on the record before it. 28 U.S.C. § 2640(a)(1). The trial court has numerous methods to receive evidence not made available by TD 96-87, such as the receipt of sworn lay and expert testimony, as was done in the trial of this action, and the receipt of evidentiary and demonstrative exhibits. Defendant is trying to conjure up determinations not made by the Trial Court. If the point of the Government's argument is that the trial court might have ruled against Plaintiff on grounds other than those stated in its opinion, that is pure and improper supposition.

## III. Meyer Never Waived Any Right to Challenge the "Second Sale" Appraisements.

The Government suggests, bizarrely, that Meyer somehow waived its right to challenge the use of the "second sales" to appraise its goods by not raising such

challenges in its prior appeal. Govt Br. at 26. This argument is wholly without foundation.

This is a 28 U.S.C. § 1581(a) protest action brought pursuant to 19 U.S.C. §§ 1514(a) and 1515, which challenges the appraised values of Meyer's merchandise, as determined in the liquidation of its entries. "Liquidation" is the final determination of, *inter alia*, the classification, appraised value, and rate and amount of duty owed on a particular entry; all findings and determinations necessary to support Customs' decision merge into liquidation. *Volkwagen of Am. Inc. v. United States*, 532 3d. 1365, 1370 (Fed. Cir. 2008). Facts necessary to sustain CBP's decision are subject to a rebuttable presumption of correctness. 28 U.S.C. § 2639(a)(1). This presumption remains in place unless the Government abandons the position it took in liquidation,[12] or there are no triable issues of fact,[13] in which case the presumption of correctness disappears.

The entries in this case were liquidated on the basis of "transaction value" at the prices in the "second sales" between the middlemen and Meyer. So far as Plaintiff is aware, the Government has not abandoned its defense of those liquidated and protested values, and issues of fact were identified at trial.

---

[12] *United States. v. E. Besler & Co.,* 64 C.C.P.A. 121, 126 (1977).

[13] *Universal Electronics Inc. v. United States*, 112. F.3d 488 (Fed. Cir. 1997).

To successfully challenge the "second sales" as the proper basis for liquidation, Meyer need only show that there were earlier "first sales" which were acceptable as the basis for determining transaction value. No particular attacks or critiques must be leveled against the "second sales," but rather, what is required is a showing that they were "second" among acceptable sales of merchandise "for exportation to the United States." *See e.g.*, *Nissho-Iwai American Corp. v. United States*, 982 F.2d 505 (Fed. Cir. 1992); *E.C. McAfee Co. v. United States*, 842 F.2d 314 (Fed. Cir. 1988); *United States v. Getz Bros. & Co,* 55 C.C.P.A. 11 (1967); *R.J. Saunders v. United States*, 42 C.C.P.A 55, 59 (1955); *United States v. S.S. Kresge Co. et al*, 26 C.C.P.A. 349 (1939). A showing that the "first sales" from the manufacturers to the middlemen—which Meyer made at trial—is all that is needed for it to prevail.

In this regard, Plaintiff continues to challenge the values at which Customs liquidated its entries. Nothing has been waived.

As contended in the first appeal, if the trade court were correct that influences flowing from the holding company, MIH, tainted the "first sales," then it had an obligation, under *Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed. Cir. 1984), to determine whether those some taints applied to the second sales, which would have resulted in the rejection of "transaction value, 19 U.S.C. § 1401a(b), as a basis of appraisement, and prompted a search for an alternate basis of appraisement. We now turn to that issue.

17

**IV. The CIT Erred in Adopting the Government's "Second Sale" Appraisements Without Considering Factors Cited in Rejecting Meyer's "First Sale" Appraisements.**

The lower court's oversight in fulfilling its duty under *Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed. Cir. 1984) (requiring that the Court reach the "correct" result in every case), is evident in its approach to both the "first sale" and "second sale" examinations.

*Nissho-Iwai* instructs that once "first sale" transaction value prices are found acceptable, inquiry into the "second sale" prices is not appropriate. At its core, Meyer submits that inquiry into the "second sale" prices is not appropriate because the "first sale" prices are a reliable and proper basis for transaction value. Indeed, the issue common to all denied protests is whether CBP properly denied first sale treatment for Meyer's imported cookware. Govt Br. at 28-29; Appx91. Meyer contends that, after rejecting Meyer's "first sales" based on an inappropriate adverse inference drawn in connection to MIH, the lower court did not examine the Government's "second sale" appraisements against this same standard. Accordingly, if the CIT properly rejected the first sales as unreliable, then it was required to determine if the second sales were equally unacceptable for the same reasons. This is not complicated, but the Government tries to paint it as such.

The Government contends that Meyer's position results from an "overreading of *Jarvis Clark* and 28 U.S.C. § 2643(b)," and warns that, if adopted, this "would

entitle importers who fail to meet their evidentiary burden … to perpetual retrial until they can proffer the minimum quantum of evidence needed to win." Govt Br. at 32. However, the Government is wrong that the CIT is permitted to "adopt[] the second sale price by default[,]" or that CBP's "mere acceptance of Meyer's second sale values" can be upheld by the CIT based on the presumption of correctness without the evidentiary support necessary for the CIT to determine if this result is the "correct result."

An examination of 28 U.S.C. § 2643(b), is instructive. The law provides:

> (b) If the Court of International Trade is unable to determine the correct decision on the basis of the evidence presented in any civil action, the court may order a retrial or rehearing for all purposes, or may order such further administrative or adjudicative procedures as the court considers necessary to enable it to reach the correct decision.

Congress clearly went beyond merely granting the CIT powers of remand; it also directs that the Court may conduct additional judicial proceedings when necessary to reach the correct result. While the statute is couched in permissive language—*i.e.,* "may"—the Federal Circuit's *Jarvis Clark* decision mandates that the powers set out in § 2643(b) be used to "find the *correct* result by whatever procedure is best suited to the case at hand." 733 F.2d at 878 (emphasis in original). This demands *active* scrutiny by the Court, rather than *passive* adoption of Customs' determinations.

Indeed, because of this Court's *Jarvis Clark* decision, 28 U.S.C. § 1581(a) protest cases are more akin to a civil law judicial investigation than to a traditional

English law adversary proceeding. The CIT's *de novo* review supports this view. 28 U.S.C. § 2640(a)(1)[14] ("The [CIT] shall make its determinations upon the basis of the **record made before the court** in [*inter alia*] … [c]ivil actions contesting the denial of a protest … ") (emphasis added). In *Target Stores v. United States*, 471 F. Supp. 2d 1344 (2007), a protest case, the CIT noted that "the proper appraisement value, or transaction value which must be used pursuant to the statute is a legal issue, as determined by 19 U.S.C. § 1401a (b)(1), *Nissho Iwai*, and *E.C. McAfee Co. v. United States*, 842 F.2d 314 (Fed. Cir. 1988)." And in a valuation case, the *Target Stores* decision further instructs that the CIT is obligated "to find the correct result by making the necessary findings of fact at a trial." *Id.* (citing *Jarvis Clark*, 733 F.2d at 878).

As noted in *Simod America Corp. v. United States*, 872 F.2d 1572 (Fed. Cir. 1989), where a trial record does not contain sufficient evidence to allow a determination of the true classification (or, as here, valuation) of goods, *Jarvis Clark* demands a remand:

> The correctness of Customs classifications is too important a matter to be made the subject of word games any longer, and the courts are too burdened with cases for the same or similar entries to be litigated and relitigated over and over again.

---

[14] The Court's *Jarvis Clark* obligation extends to both questions of *fact* and conclusion of *law*. *See Peerless Clothing Int'l Inc. v. United States*, 602 F. Supp. 2d 1309, 1315 (Ct. Int'l Tr. 2009) (citing 28 U.S.C. § 2640 (a)).

*Simod America*, at 1579. Definitive resolution is of utmost important because decisions in protest cases are not *res judicata*. Legal issues raised in a protest should be definitively resolved wherever possible; as this will ultimately conserve judicial resources, as is the mandate of U.S. Ct. Int'l Tr. Rule 1. Accordingly, the Government's contrived fear of endless litigation, Govt Br. at 32, is totally unfounded and has already been rejected in this context. *See Simod America.*

These cases instruct that the lower court may not passively uphold an unexamined Customs' determination simply because an importer's evidence was in its view insufficient to allow the Court to glean the "correct result." *Simod America Corp.,* 872 F.2d 1572 (Fed. Cir. 1989).[15] If that is the case—as the Court suggests insufficiency of evidence here—the Court must push farther to determine the "correct result" in every case, both as to questions of fact and as to questions of law.

---

[15] The Federal Circuit in *Simod* noted:

On the other hand, we are unable on the present record, and in the absence of findings by the [CIT], to discern what the true classification should have been. This would formerly have required affirmance of the erroneous classification since under former law, the importer had a dual burden to establish the error of the Customs classification, and the correctness of a classification properly claimed by it. By *Jarvis Clark Co. v. United States*, 733 F.2d 873, 2 Fed. Cir. (T) 70 (1984), this unique rule has been held repealed by Congress.

*Simod America Corp.*, 872 F.2d at 1578-79.

Here, the record demonstrates that the lower court sidestepped a thorough examination of the "first sale" prices (and drew no conclusions regarding them) , relying instead on an unfounded adverse inference that these prices were potentially influenced by unspecified actions of Plaintiff's parent company, MIH. This adverse inference not only disregards the credible expert testimony and reports of Craig Pinkerton—which directly address the criteria set forth in 19 C.F.R. § 152.103(l)(1)(iii) (Appx41, Appx56)—but also overlooks the Government's abject failure to present any counter-evidence. Such counter evidence would necessarily have to align with the test set forth in 19 C.F.R. § 152.103(l)(1)(iii); and no effort was made by the Government to conduct an inquiry in accordance with the regulations. Moreover, the Government made no effort to compel production of MIH financials, whose withholding served as the basis for the lower court's adverse inferences.

Yet having failed to establish the conditions precedent for drawing an adverse inference or exercising its obligations to try and compel the production of the evidence it sought, the Government at trial urged the CIT to draw an adverse inference from Meyer's failure/inability to produce information not in its possession. In similar circumstances, such a litigating posture has been rejected as "absurd." [16]

---

[16] *See Morgan v. Cnty. of Nassau*, 2017 U.S. Dist. LEXIS 22992, *17 (E.D.N.Y 2017).

The CIT's affirmation of Customs' arbitrary decision to appraise Meyer's merchandise based on the unexamined "second sale" appraisements is not only a glaring oversight but is also a deviation from established legal standards which leads its decision to crumble under the weight of its *Jarvis Clark* obligations. As the CIT did not fulfill its *Jarvis Clark* duty when it neglected to assess the "first sales" prices in accordance with the criteria established by CBP's regulations, 19 C.F.R. § 152.103(l)(1)(iii), further proceedings are necessary, and a remand is appropriate.

## CONCLUSION

For the reasons given above, the Plaintiff-Appellant requests that this Court vacate the opinion and judgment of the CIT, and remand this matter for proceedings consistent with this Court's opinion.

Respectfully submitted.

/s/ John P. Donohue
John P. Donohue
  *Counsel of Record*
NEVILLE PETERSON LLP
100 N. 18th Street, Ste. 300
Philadelphia, PA 19103
(267) 207-3421
jdonohue@npwny.com

John M. Peterson
Patrick B. Klein
NEVILLE PETERSON LLP
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Richard F. O'Neill
NEVILLE PETERSON LLP
701 Fifth Ave, Ste. 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com
*Attorneys for Plaintiff-Appellant*

September 21, 2023

## **CERTIFICATE OF COMPLIANCE WITH**
## **TYPE-VOLUME LIMITATIONS**

I hereby certify that the foregoing Reply Brief of Plaintiff-Appellant, Meyer Corporation, U.S., complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules. It was prepared using a proportionally-spaced typeface and includes 5,542 words.


    /s/ John P. Donohue
        John P. Donohue

September 21, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of September, 2023, I electronically filed the foregoing Reply Brief of Meyer Corporation, U.S., with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.

    /s/ John P. Donohue
       John P. Donohue

September 21, 2023